# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREAT LAKES DREDGE & DOCK COMPANY, LLC, <br><br> *Plaintiff*, <br><br> vs. <br><br> PHILLY SHIPYARD, INC., <br><br> *Defendant.* | Case No.: 2:24-cv-06198 |

## [PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

AND NOW on this _____ day of _____, 2024, upon consideration of Great Lakes Dredge & Dock Company, LLC's ("Great Lakes's") Motion for Temporary Restraining Order and Preliminary Injunction, it is ORDERED that Great Lakes's request for a preliminary injunction is hereby GRANTED.

## I.     INTRODUCTION AND BACKGROUND

Great Lakes brought this action against Philly Shipyard, Inc. ("Philly"). On or about November 15, 2021, Great Lakes and Philly executed the Vessel Construction Agreement for Subsea Rock Installation Vessel (the "VCA"). Through the VCA, Great Lakes hired Philly to build the first United States-flagged, Jones Act-compliant subsea rock installation vessel for wind turbine foundations (the "Vessel").

Philly recently notified Great Lakes of its intent to remove the Vessel from its position in the dock and float it into the harbor, over Great Lakes's objection. Great Lakes alleges that Philly's contested "float" strategy would breach the VCA because Great Lakes has not consented to it, which Great Lakes contends is required by VCA § 8.7. Despite its objection, Great Lakes alleges

that Philly chose not to weld Grand Block 14 to the hull of the Vessel, but instead lifted it out of the building dock in furtherance of its contested "float" plan.

Great Lakes further alleges that removing the Vessel from its position in the dock at this stage of construction and taking action to prepare to move it puts the Vessel at risk of being damaged. The Vessel is not designed to be waterproofed or floated at this stage of construction, and changing the design and taking actions to waterproof the Vessel at this stage of construction could permanently physically damage it. Great Lakes also alleges that the Vessel could be damaged while in transit from the dock to the harbor and from the harbor back to the dock.

Separately, Great Lakes alleges that Philly's schedules are showing delivery dates as late as September 30, 2026, 593 days past the February 14, 2025, delivery date. Great Lakes alleges that this projected delay demonstrates that Philly has failed to meet the duty of diligence that Philly accepted via VCA § 9.4, and that Philly has further failed to meet its duty of diligence by failing to devote adequate manpower to the construction of the Vessel. Great Lakes alleges that Philly has done nothing to make up for lost time, despite Great Lakes demanding that Philly due so pursuant to VCA § 8.13(d).

Finally, Great Lakes alleges that Philly has failed to develop and maintain a fully resource-loaded, logic-linked schedule, in violation of its obligations under VCA §§ 8.2–8.6.

## II. GREAT LAKES'S REQUEST FOR A PRELIMINARY INJUNCTION

Federal Rule of Civil Procedure 65 authorizes the Court to issue preliminary injunctions. In deciding whether to grant the preliminary injunction order that Great Lakes seeks, the Court must consider whether (1) Great Lakes has demonstrated the likelihood of its success on the merits; (2) Great Lakes will be irreparably harmed by the denial of injunctive relief; (3) the balance of the

harms favors Great Lakes; and (4) the public interests favors the requested relief. *See Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d. Cir. 2010).

The Court finds that Great Lakes's requested preliminary injunction order should be granted, pursuant to Rule 65(a), under these circumstances.

Great Lakes has shown it is likely to succeed on the merits of its breach of contract claim. Philly appears to have breached the VCA in the following, independent ways: (1) by modifying the Vessel's build strategy without consent; (2) by projecting to fail to timely deliver the Vessel; (3) by breaching its duty of diligence through failing to diligently prosecute the work under the VCA, diverting resources from the Vessel to other projects in the shipyard, laying off specialized labor necessary to complete the Vessel, and refusing to undertake costs to make up for lost time; (4) by failing to create and maintain a project schedule; and (5) by failing to take action to recover lost time.

Moreover, it appears from the facts shown by the declaration and exhibits submitted by Great Lakes that immediate and irreparable injury will result in three independent ways. First, Philly admitted at VCA § 9.4(d) that Great Lakes would be irreparably harmed if Philly breached its duty of diligence. Second, Philly's failure to timely deliver the Vessel will result in irreparable harm to Great Lakes in the form of reputational damage and loss of goodwill with Great Lakes's investors, customers, and in the marketplace. Third, the Vessel could be irreparably physically damaged, up to a total loss, if Philly proceeds with its contested "float" strategy. Absent the grant of interim equitable relief and if this irreparable harm were to occur, there is a substantial chance that upon final resolution of the action that Great Lakes could not be returned to the position it previously occupied.

Finally, the balance of harms favors Great Lakes, as Great Lakes's requested relief seeks to hold Philly to its contractual responsibilities. The public interest will accordingly be served by preserving the status quo.

## III.   CONCLUSION.

For the reasons set forth above, Great Lakes's Motion for a Preliminary Injunction is GRANTED.

Philly is hereby enjoined from taking any action to remove the Vessel from its position in the dock and floating it into the harbor until the Vessel is ready to be outfitted according to the original, agreed-upon build strategy, or from taking actions to prepare the Vessel to be removed from its position in the dock and floating it into the harbor before the Vessel is ready to be outfitted according to the original, agreed-upon build strategy.

Philly is further enjoined from diverting shared resources from the Vessel to other projects in the shipyard. On each day, if labor resources exist at the shipyard who are qualified to perform the tasks scheduled to progress the construction of the Vessel for that day, those resources must be devoted to progressing the construction of the Vessel.

Philly is further required to develop and maintain a project schedule that complies with VCA §§ 8.1 through 8.6, which are excerpted below.

> 8.1   Builder's Obligation to Establish and Maintain Project Schedule. Builder shall establish a baseline project schedule and maintain throughout the performance of the Work a detailed current project schedule and execution plan (the "*Project Schedule*") in electronic form including embedded logic and data for completion of the Work by the Delivery Date. The Project Schedule shall remain a living document and shall include all significant activities in the design, procurement, construction, and testing and commissioning phases of the Vessel, including the work of Material Subcontractors or Suppliers. Unless otherwise agreed, Builder shall maintain the Project Schedule from a Level 4 up. Builder shall update the baseline project schedule if at any time the Project Schedule no longer shows the status of the Work with reasonable accuracy.

4

8.2     General Project Schedule Requirements. The Project Schedule shall be a resource loaded schedule that includes a critical path analysis and reflects resource requirements. More specifically, the Project Schedule shall clearly show the critical path and the schedule's calendar shall be set up to include the number of Working Days per week, the number of shifts per Day, and non-Working Days and holidays. The format of the Project Schedule shall be subject to Owner's approval, such approval not to be unreasonably withheld, conditioned or delayed.

8.3     Specific Project Schedule Requirements. Without limitation to Sections 8.1 and 8.2, the Project Schedule shall include the following elements and features:

(a)     the dates for commencement and completion of the Work, reflecting an overall project execution strategy;

(b)     description of the Work in sufficient detail to allow weekly progress measurement;

(c)     all significant activities in the design, procurement, construction, and testing and commissioning phases of the Vessel, including the work of Subcontractors

or Suppliers, including requests and deadlines for required vendor-furnished information;

(d)     sequencing and dependencies of all activities, and all predecessors and successors to each activity, including vendor-furnished scheduling information and constraints;

(e)     activity durations, including start and finish dates;

(f)     all points of interface between Owner and Builder, including instances where performance of the Work depends upon Owner, such as dates on which Owner information and Owner Furnished Equipment ("*OFE*") are required;

(g)     scheduling float for component activities and total float;

(h)     due dates for engineering design deliverables;

(i)     required-in-yard dates for all major and long-lead (exceeding one hundred and eighty (180) Days from order to delivery) Materials and equipment;

(j)     minimum leads or lags;

(k)     no constraints of major milestones, including Vessel Delivery;

(l) the expected surveying and testing schedule for the various components of the Work; and

(m) the dates of expected completion of each Stage of Completion task set forth in Exhibit O.

8.4 Project Schedule. Builder has provided to Owner a preliminary schedule attached hereto as Exhibit H. Not later than 30 Days following the Effective Date, Builder shall provide Owner with access to a detailed schedule for the Work to be accomplished during the period between the Effective Date and Builder's development of the Project Schedule as required Sections 8.1 to 8.3. Not later than ninety (90) Days following the Effective Date, Builder shall provide Owner with access to the detailed Project Schedule prepared in accordance with the requirements of Sections 8.1 to 8.3.

8.5 Maintenance of Project Schedule. Builder shall actively maintain the Project Schedule on an ongoing basis. Builder shall update the status of the Work in advance of each weekly status meeting held in accordance with Section 8.10 unless otherwise agreed in writing.

8.6 Updates to Project Schedule. Updates to the Project Schedule and/or the status of the Work shall include each activity's actual start date, actual finish date, and the remaining duration of the Work, and shall reflect the effect of Change Orders, if any.

Philly is further required to comply with its duty of diligence as set forth in VCA § 9.4, which is excerpted below and that, for the purposes of this Order, specifically includes putting the necessary resources to the construction of the Vessel to achieve timely delivery.

9.4 Builder's Duty of Diligence.

(a) *Builder to Proceed with Diligence*. Without limitation to Section 9.3, Builder shall at all times prosecute the Work diligently to ensure its completion in full accordance with the Contract Documents within the time required for delivery of the Vessel by the Delivery Date or as soon thereafter as reasonably practicable.

(b) *Builder to Furnish Sufficient Workers and Resources*. Builder shall at all times furnish sufficient numbers or amounts of properly skilled and qualified workers, acceptable Materials and equipment and adequate services and tools and equipment necessary for the Work and the delivery of the Vessel by the Delivery Date or as soon thereafter as reasonably practicable. Builder shall not fail to allocate all necessary and available resources as reasonably practicable to the timely

6

completion of the Work to prevent or alleviate any actual or potential delay under any circumstances.

> (c) *Builder to Prioritize Completion*. Builder expressly agrees it will not take, or fail to take, any action based on an assumption that the payment of liquidated damages would be more economically advantageous for Builder than the cost of allocating necessary available resources to the construction of the Vessel that, if so allocated would prevent or lessen any delay in the delivery of the Vessel.

Philly is further required to comply with its duty to take actions to recover the project schedule as set forth in VCA § 8.13(e), which is excerpted below and that, for the purposes of this Order, specifically includes placing all purchase orders required under the VCA within 60 days of the entry of this order and paying for materials purchased under the VCA to be shipped by air.

> (d) *Builder Actions to Recover Project Schedule*. Builder shall take such as actions as are reasonably practicable to ensure that the Vessel be completed by the Delivery Date or as soon thereafter as reasonably practicable, including adding additional shifts or engaging additional workers or Subcontractors as necessary to ensure the Work is completed in such time.

IT IS SO ORDERED

Date: _____

_____
Honorable Judge Presiding