# Exhibit 5



9811 Katy Freeway, Suite 1200
Houston, Texas  77024   USA
346-209-1919
www.gldd.com

October 21, 2024

**VIA EMAIL**
To:    PHILLY SHIPYARD, INC.
       2100 Kitty Hawk Avenue
       Philadelphia, PA 19112
       Attention:    Steinar Nerbovik
                        Thomas Grunwald, Vice President

Subj:   VESSEL CONSTRUCTION AGREEMENT for the Construction of a Subsea Rock Installation Vessel ("VCA"); PSI Hull No. S 038 ("Vessel")

        **PSI'S CONTINUING FAILURE TO COMPLY WITH VCA ARTICLES 8 & 9**
        **THE ALTERNATE EXECUTION PLAN IS UNACCEPTABLE**
        **RESPONSE TO INVOICE FOR MILESTONE #7**

Dear Steinar and Thomas:

We write in response to your letter dated October 5, 2024, and to further address ongoing concerns with respect to construction of the Vessel.

**PSI'S CONTINUING FAILURE TO COMPLY WITH VCA ARTICLES 8 & 9**

To start, that PSI has failed to meet its obligations under the VCA's Article 8 (regarding the Project Schedule and Coordination) and Article 9 (regarding Prosecution of the Work) is self-evident and cannot be reasonably disputed. PSI is currently proposing delivery dates as late as September 30, 2026, ***593 days past*** the February 14, 2025, contractual delivery date.

This latest proposed delivery date, which your letter says PSI estimated after it "review[ed] GLDD's challenges to the schedule" continues the troubling trend of PSI estimating delivery dates that are later and later after GLDD points out basic flaws in PSI's schedule. For example:

- Even though the contractual delivery date based on approved change orders is February 14, 2025, PSI in the May 15, 2024, Weekly Meeting presentation proposed an "August 2025 Delivery" based on a "Revised Schedule submitted Friday, 10 May 2024."

- PSI's August 26, 2024, letter stated that PSI's "revised schedule" dated August 16, 2024, "shows a delivery date of October 30, 2025."

- Your October 5, 2024, letter now states that "PSI reviewed GLDD's challenges to the schedule," and "estimated delivery date of September 30, 2026."

In other words, though less than five months passed from May to October, PSI's estimated

delivery date was pushed out *more than a year*. This proves true what GLDD has been raising since 2022: PSI has failed throughout the project to meet its obligations to maintain a project schedule consistent with VCA Article 8 or to prosecute the work consistent with VCA Article 9. In a good faith attempt to reach commercial resolutions throughout the construction process, GLDD historically accepted PSI's assurances that it was capable of and working toward timely delivering the Vessel. Action, not assurances, is now necessary. And we must emphasize: It is not GLDD's responsibility to walk PSI to a fully resource-loaded and logic-linked schedule through a constant submission and revision process. VCA Sections 8.2 through 8.6 place those responsibilities solely on PSI, and those responsibilities have not been met.

At this point, PSI's delays threaten to irreparably harm GLDD through reputational damage in the marketplace, GLDD's inability to meet its own obligations to customers in 2025 and 2026 that were entered into on the premise that PSI would timely deliver the Vessel, and reputational damage with stakeholders—all of which are in addition to the VCA Section 9.4(d)'s recognition that PSI's failure to meet its obligations under VCA Section 9.4 "would present irreparable harm" to GLDD. Pursuant to VCA Section 8.13(e), we direct PSI to comply with its contractual obligations under VCA Articles 8 and 9, and VCA Sections 8.13(d) and 9.4 in particular. If PSI does not soon present a schedule compliant with the VCA that would deliver the Vessel in an acceptable timeframe and provide acceptable commitments that PSI will comply with VCA Article 9 and not divert shared resources to other projects, then GLDD will have no choice but to exercise its right under VCA Section 9.4(d) to seek equitable and injunctive relief and to consider all other rights to seek all other remedies.

That your October 5, 2024, letter refuses to recognize that PSI has any responsibility for this unacceptable delay erodes trust. For example, PSI was provided the Basic Design and Specifications with the initial bid package for the VCA. To the extent that PSI believed there were errors and omissions in the Basic Design, those concerns should have been raised before the VCA was executed. And PSI's complaints about the Basic Design rest on a faulty premise: The Basic Design is just that—a *basic design*. VCA Section 7.4 gives PSI "the sole and exclusive responsibility to carry out all additional detailed engineering and design work required for the performance of the Work." That PSI chose to hire a detailed design subcontractor who lacks experience in subsea rock installation vessels and who has struggled to produce detailed designs compliant with the Basic Design and Specifications do nothing to lessen PSI's obligations under VCA Section 7.4. In all events, VCA Section 7.10 requires that PSI address any supposed errors in the Basic Design via the change order process as outlined in VCA Section 10.6(b), not baselessly claim delay in passing via letter (which, for the avoidance of doubt, is rejected). In short, PSI's claims of delay due to flaws in the Basic Design ring hollow in light of PSI's failure to manage its detail design engineer and its failure to provide timely procurement information on which those detailed designs are based.

Further, PSI contractually agreed to work with Kongsberg Maritime as a single-source supplier, and PSI based its bid on Kongsberg's prices. Any difficulty that PSI is experiencing from dealing with Kongsberg as a single-source supplier is the result of PSI's failure to timely manage the relationship and to timely place orders with Kongsberg, which GLDD perceives is due, in part, to PSI's failure to provide sufficient resources dedicated to the Project and instead to share resources for the Vessel with PSI's other projects in the shipyard, which have often resulted in shared resources being diverted away from the Vessel in favor of PSI's other customers. To be

clear: GLDD refutes and denies any claim that delays with single-source vendors constitute Permissible Delay. And GLDD notes the irony of PSI claiming that the delivery of the Kongsberg package "is on the critical path" when PSI has refused GLDD's request to produce a critical path analysis—*even though a critical path analysis is required by VCA Section 8.2*.

Your letter also refers to discussions regarding "acceleration costs," as if GLDD is supposed to serve as a buffer for any costs borne by PSI that cut into its expected profit margin. These supposed "acceleration costs" are simply the costs to complete the Vessel as has been required by the VCA since its inception. That PSI failed to appreciate these costs because it failed to develop and maintain a schedule in violation of VCA Article 8 does not make them anyone else's responsibility. At bottom, PSI is contractually obligated to improve the schedule and to bear the associated costs.

Finally, we were informed this week of yet another example of PSI's failure to assign the necessary resources to this project as required under the VCA. GLDD was informed in the weekly Production Status review meeting on October 17, 2024, that specialist outfitting workers, specifically required for the outfitting of the grand blocks, were laid off by PSI some time ago and there was, therefore, a workforce deficiency for outfitting.

While we remain willing to discuss a commercial resolution to these issues, our patience—which has been generous throughout this project—is worn thin. PSI's failure to propose, develop, and implement an acceptable resolution to these issues in the immediate term will result in a complete breach of trust.

## **THE ALTERNATE EXECUTION PLAN IS UNACCEPTABLE**

PSI's proposed alternate execution plan is unacceptable, and GLDD rejects it pursuant to VCA Section 8.7. PSI does not have the authority or approval to remove the Vessel from its current position in the dock to re-sequence work. Any attempt to do so could result in irreparable harm to GLDD, including a total loss of the Vessel, and will result in GLDD exercising its rights under VCA Section 9.4(d) to seek equitable and injunctive relief.

We are not convinced that floating the Vessel would result in the schedule gains that PSI suggests or that schedule gains cannot be obtained by other, less risky means. For example, despite supposedly working on this plan for the past six weeks, PSI has failed to provide a fully resource-loaded schedule that would support the promised project gains, which is concerning in and of itself, but even more so in the context that PSI has not been able to make *any* project gains through the past three years of construction.

And PSI's "engineering feasibility" study for the "float tandem" approach—which was just two GANTT charts—is riddled with errors, as GLDD pointed out by email on October 17, 2024. We do not believe that such a maneuver can be safely or efficiently performed and have grave concern regarding its impact to the Vessel and its current condition.

Rather than using resources to waterproof and float the Vessel—which, conveniently for PSI, would accelerate when it can begin other commercial projects—PSI should use that manpower and those resources to accelerate its delivery of the Vessel.

## INVOICE FOR MILESTONE #7

GLDD received Invoice No. 7 on October 18, 2024. GLDD disputes that PSI has earned the milestone payment at this time. It is impossible for GLDD to verify the earned progress required for Milestone Payment No. 7 via VCA Amendment 2 without an agreed schedule. We note that PSI has apparently been working toward the proposed alternate execution plan (despite GLDD's lack of approval). However, Invoice #7 refers to the "baseline schedule." It is not clear whether the "baseline schedule" refers to the schedule that was presented at the end of August, which was later disqualified by PSI as unobtainable, or some other baseline schedule that is yet to be presented. In addition to this glaring barrier to payment, we point out the following deficiencies:

1. Builder's Lien Release refers to Payment No. 6, rather than Payment No. 7;

2. PSI has failed yet again to provide contractually required monthly reports for August and September 2024;

3. Lack of supporting P6 .xer documentation; and

4. Inaccurate supporting calculations and misuse of relevant percentage for milestone.

Sincerely yours,

Chris Gunsten
GREAT LAKES DREDGE & DOCK COMPANY, LLC

cc:    Lasse Petterson
       Vidar Lindmoen
       Stephanie Espinoza

       Dean Grabelle (PSI)